**MAGIC FOAM SALES CORP., Plaintiff, v. MYSTIC FOAM CORP., Defendant.**

Common Pleas Court, Cuyahoga County.

No. 595752.   Decided November 14, 1950.

John W. Meyer of the law firm of Hyde, Meyer, Baldwin & Dorann, Cleveland, Zugelter & Zugelter, Cincinnati, for plaintiff.

Raymond L. Davis of the law firm of Krueger, Gorman & Davis, Cleveland, for defendant.

## OPINION

By KOVACHY, J:

The Magic Foam Sales Corporation, an Ohio corporation, located at Cincinnati, claims an infringement of its common law trademark "Magic Foam" by the Mystic Foam Corporation, an Ohio corporation of Cleveland.

Magic Foam, Inc., an immediate predecessor of plaintiff, was incorporated November 14, 1932, at which time it took over the upholstery cleaner business of a partnership and acquired at the same time the latter's trade name "Magic Foam." The plaintiff was organized on or about January 17, 1935.

The defendant was organized on or about March 8, 1934. Its immediate predecessor was a partnership which commenced using the trade-mark "Mystic Foam" around December 15, 1933, and obtained a United States registered trade-mark for it on October 8, 1935.

There is no question here that the public use of the expresion "Magic Foam" antedates that of "Mystic Foam."

Plaintiff claims that the term "Mystic Foam" is confusingly similar to that of "Magic Foam" and asks that the defendant be enjoined from using the term "Mystic Foam" in its corporate name, as a trade-mark or on any of its labels or literature and that an accounting for profits and damages be awarded it against the defendant.

In the trial of this cause defendant made motions for judgment at the close of plaintiff's case, in the midst of the presentation of its own case and at the close of all the evidence. These motions were taken under advisement by the Court. Inasmuch as the Court now has the benefit of the evidence presented by both sides in the cause it desires to make its rulings on the basis of all the evidence before it.

One of the grounds on which defendant bases its motions is that the plaintiff does not come into court with clean hands.

In its ruling herein the Court gives this claim its main consideration.

Labels (Defendant's Exhibits 24 and 25) used by the plaintiff on its product carry the following expressions:

1. "Patent Pending."

2. "Restores the natural oils usually lost with ordinary cleaners."

3. "Won't burn or explode."

4. "Exterminates and acts as a protective agent against moths."

5. "The sterilization action is fatal to disease and germs lurking in the fabric."

6. "It does not harm the hands."

Its advertisements carry the statement—"Magic Foam, the original Foam type cleaner." (Defendant's Exhibit 82)

Item No. 1—Patent Pending—has been printed on the labels since the inception of the "Magic Foam" business in 1932 despite the fact that no patent had ever been applied for. It leads purchasers to believe that "Magic Foam" is made up of a compound which is novel and unique and possesses qualities which are unusual and unpossessed by other products on the market. It, also, deters others from selling a like product for fear of infringing upon the monopoly about to be granted. The use of this term on labels is a clear fraud upon the public and a badge of dishonesty in the conductance of plaintiff's business.

In 11 House of Lords, page 542 (Leather Cloth Co. v. American Leather Cloth Co.) Lord Kingsdown says the following:

"If a trade mark represents an article as protected by a patent, when in fact it is not so protected, it seems to me that such a statement prima facie amounts to a misrepresentation of an important fact, which would disentitle the owner of the trade mark to relief in a Court of equity against anyone who pirated it."

The Federal Circuit Court of Illinois, in Preservaline Mfg. Co. v. Haller Chemical Co. 118 Fed. Rep. 103, has the following to say in its syllabus:

"The use by the manufacturer of an article, for several years after a patent therefor had expired, of advertising circulars containing the word 'patented', or statements clearly implying that it was protected by a patent, which circulars were inclosed in the packages in which the article was sold, is such a fraud as will preclude relief in equity against unfair competition, although no such statements were made in connection with complainant's trade-mark, or on the packages

themselves; it being impossible for the court to determine to what extent the value of complainant's business, which it is asked to protect, is due to such fraudulent action."

Item No. 2—Restores the natural oils usually lost with ordinary cleaners—. There is conclusive evidence that the formula used by "Magic Foam" contains nothing to restore any natural oil that may have been lost by the fabric.

Item No. 3—Won't burn or explode—. A quart can of Magic Foam when opened in the court room and a lighted match held over it produced a flame lasting a few seconds. Any one familiar with chemistry knows that ether burns and has a low boiling point.

Webster's New International Dictionary has the following to say of Ether:

"A light, volatile, mobile, highly inflamable liquid—boiling point 94.3 degree F."

The ether in this product would boil on a hot summer day and readily burn if near a fire or a flame. How then can a statement that it "won't burn" be honestly made in respect of it? Moreover, the undisputed evidence is that "Magic Foam" because of its ether content is a dangerous solution and not acceptable as a fire-proof product.

Item No. 4—Exterminates and acts as a protective agent against moths—. The evidence is that such statement is untrue and false.

Item No. 5—The sterilization action is fatal to disease and germs lurking in the fabric. —Such statement likewise is untrue and false.

Item No. 6—It does not harm the hands. —The testimony is uncontradicted that the ammonia and ether contained in this product "tenderizes" the hands of all women.

The representations delineated above are all untrue and false. They, moreover, state facts which are important and material because they enhance the value of the product to the purchaser. These misrepresentations about "Magic Foam" have been made to the public for 17 years. It is most difficult to determine the business attracted to the plaintiff or the harm inflicted upon the buying public by them. Certain it is that both are quite considerable.

The statement—Magic Foam, the original Foam type cleaner —the Court considers in the category of mere business puffing. As such it does not create the impression that "Magic Foam" is a superior product because of it to the buying public.

Equity restrains a business house from infringing upon the trade-mark of another to prevent the public from being mis-

led. It decries the public being deceived by representations which give the goods a character and reputation which they do not possess or deserve so that the remedy granted is not based alone upon the property acquired by one owning symbols and names as trade marks but also on the broad principle that it will not permit fraud to be practiced upon the public nor upon private individuals.

See Pomeroy's Equity Jurisprudence, 5th edition. Volume 3 Section 934 f, and Volume 4, Section 1354.

Should a Court of Equity then entertain a complaint of deceit and fraud against another in the use of a trade-mark confusingly similar when the complainant itself is guilty of misrepresentations as to material facts in the business in which the trade-mark claimed to be infringed is used?

The Courts of England and of this country refuse their assistance in every case involving the misrepresentation of a material fact in the conductance of the business of the complaining party, and under the decisions it is immaterial whether the misrepresentation is one contained in the trade-mark itself or on the labels or general advertising material in general use.

In the case of Leather Cloth Company, Limited v. The American Leather Cloth Company, Limited, tried before Lord Chancellor Lord Westbury, 4 De Gex, Jones & Smith's Reports, page 136, a paragraph of the syllabus reads as follows:

"Where the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark or in the business connected with it be himself guilty of any false or misleading representation."

The same case went before the House of Lords, 11 House of Lords, page 523, and contains the followwing statement in its syllabus:

"Where an advertisement, or trade mark, states that which is not true, it cannot be made the subject of protection by the Court of Chancery."

An old New York case which even precedes the above, 13 Howard's Practice Reports, page 385, reads as follows in part of its syllabus:

"If a plaintiff comes into a court of equity to claim relief against the fraud of others, he must be free himself from the imputation. If the sales of an article made by the plaintiff are affected, or sought to be, by misrepresentation and

falsehood, he cannot be listened to when he complains that, by the fraudulent rivalry of others, his own fraudulent profits are diminished. An exclusive privilege for deceiving the public, is not one that a court of equity can be required to aid or sanction. (This decision on this point, followed that in Partridge Agt. Menck 1, Howard's Court of Appeals Cases 547.)"

The Supreme Court of Tennessee in C. F. Simmons Medicine Co. v. Mansfield Drug Co. 93 Tenn. Rep. 84, reads as follows:

"It is a maxim of Courts of Equity, applicable in the consideration of cases brought to prevent the unlawful infringement of trade-marks or unfair competition in business, that the complainant seeking the Court's interposition in his behalf must come with clean hands; and that he will be repelled at the threshhold of the Court, if it appears from the case made by him, or by his adversary, that he has himself been guilty of unconscientious, inequitable, or immoral conduct, in and about the same matters whereof he complains of his adversary, or if his claim to relief grows out of, or depends upon, or is inseparably connected with his own prior fraud. (Post, p. 94.)"

In a case before the Supreme Court of Pennsylvania, Palmer v. Harris, 60 Penn. State Reports, 156, paragraphs one and three of the syllabus reads as follows:

"1. The ground upon which equity restrains the counterfeiting of trade-marks is the promotion of honesty and fair dealing. * * *."

"3. Equity will not extend its protection to one whose case is not founded in truth."

In the case of Bear Lithia Springs Co. v. Great Bear Spring Company, 71 New Jersey Equity Reports, page 595, paragraph 3:

"If the commodity which the complainant is selling under a trade name, trade mark or symbol, is offered to the public under a misrepresentation or falsehood, he has no standing in a court of equity, nor can he successfully call upon that court to aid him in preserving to him the right to deceive the public without interruption."

The Supreme Court of the United States in Manhattan Medicine Co. v. Wood, 108 U. S. Reports, page 224, had the following to say:

"When the owner of the trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark, or

in the business connected with it, be himself guilty of any false or misleading representation; for if the plaintiff makes any material false statement in connection with the property he seeks to protect, he loses, and very justly, his right to claim the assistance of a court of equity."

Also in Worden v. California Fig Syrup Company, 187 U. S. Reports, page 516:

"When the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public it is essential that the plaintiff should not in his trade mark or in his advertisements and business, be himself guilty of any false or misleading representation, and if he makes any material false statement in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity; and where any symbol or label claimed as a trade mark is so constructed or worded as to make or contain a distinct material assertion which is false, no property can be claimed on it, or, in other words, the right to the exclusive use of it cannot be maintained."

Ohio follows strictly in line with the above pronouncements: **39 O. Jur., page 423:**

"* * * It is immaterial whether the representation is contained in the trade mark or made in the conduct of the business connected with it; if the plaintiff makes any materially false or misleading statement in connection with the property he seeks to protect, he loses, and very justly, his right to claim the assistance of a court of equity."

In the case of **Buckland, et al v. Rice, et al., 40 Oh St, page 526:**

"Where a trade-mark contains a material misleading representation a court of equity will not protect it."

Plaintiff herein claims that it had purged itself of unclean hands in respect to Items No. 2, No. 4, and No. 5, by the printing of a new label, Plaintiff's Exhibit 136. The evidence is clear, however, that at the time this action was commenced labels exemplified by Defendant's Exhibits 24 and 25 were in use, and the law seems well established that courts of equity in considering the question of plaintiffs coming into court with unclean hands are guided by the state of the matter at the time suit is commenced.

Circuit Court, N.D.California, in the Alaska Packers' Association v. Alaska Imp. Co., 60 Fed. Reports, page 103, syllabus, paragraph 2, held, as follows:

"Correcting false statements after the suit is filed, by at-

taching an additional explanatory label to the goods then being sold, does not help the case of one who, because of such false statements, had no right to relief at the time the suit was filed."

However that may be, the claimed new label likewise must be proscribed. It continues to carry Items No. 1, No. 3 and No. 6 which are untrue and false and relate to material facts, as indicated above.

The defendant herein introduced hundreds of exhibits showing the extent of its business in the United States, South Africa, Canada, Alaska, Newfoundland, Brazil, Norway, Australia, Iran, Belgium, Egypt, China, Great Britain, Holland, Denmark and Mexico. Its trade-mark is registered in many foreign countries. From 1935 to 1948 it did $2,316,469 worth of business and spent close to $1,000,000 in advertising and promoting "Mystic Foam."

Where was the plaintiff during these many years? Why did it wait so long to bring this action if it felt that "Mystic Foam" was confusingly similar to "Magic Foam" and an infringement upon it? Thirteen years is a long period of time in the business world yet during all those years plaintiff slept on its rights and permitted an aggressive, imaginative and resourceful organization to develop and establish a successful and extensive business throughout the United States and in many foreign lands, and now when thoroughly outstripped in the competition for the upholstery cleaner trade it brings this action to throttle its successful rival and garner unto itself the fruits of its labor during those years.

While from the stand-point of the plaintiff such consummation is devoutly to be desired, from the stand-point of justice such consummation cannot be had under the facts in this case.

Plaintiff by its dishonest methods of conducting its business does not come into this Court of Equity with clean hands and is, therefore, barred from any relief whatsoever in the premises.

Decree for the Defendant. A Journal entry may be drawn accordingly with plaintiff's exceptions noted.